**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Crim. No. CCB-04-564 |
| | * | |
| JAMES SWEETS | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM**

James Sweets is a federal prisoner who is serving a 30-year sentence for drug trafficking offenses. Now pending is Sweets's motion for a reduced sentence pursuant to Section 404 of the First Step Act. (ECF 228). The government opposes the motion, (ECF 229), and Sweets has replied, (ECF 230). On April 16, 2020, defense counsel filed supplemental correspondence, asking that Sweets's sentence be reduced to time served, plus a period of home confinement, in light of the ongoing COVID-19 pandemic and concerns that Sweets may be particularly susceptible to serious illness due to underlying health conditions. (ECF 232). The government responded in opposition. (ECF 233).[1]

For the reasons explained below, the motion will be granted and Sweets's sentence reduced to time served plus five business days, followed by a ten-year term of supervised release of which the first 90 days will be served on home confinement.

**BACKGROUND**

On February 10, 2005, Sweets was charged with one count of conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846 (Count One), and one count of conspiracy to possess firearms in furtherance of a drug trafficking crime,

---

[1] Defense counsel had also previously filed supplemental correspondence informing the court of new Fourth Circuit authority in support of Sweets's motion. (ECF 231).

1

in violation of 18 U.S.C. § 924(n) (Count Two). (*See* ECF 77). Before trial, the government filed a notice of enhanced penalties pursuant to 21 U.S.C. § 851, (ECF 36), stating that because Sweets had a prior felony drug conviction, he faced a mandatory minimum of 20 years if convicted. (*See* Mot. 2–3; *see also* Sent'g Tr. at 7–8, ECF 228-1). Sweets was convicted by a jury on both counts.

At the sentencing hearing on December 21, 2005, the court found Sweets responsible for 50 grams of crack, resulting in a base offense level of 32. (Sent'g Tr. at 19–20). Because firearms were possessed in connection with the offense, the court added a two-level enhancement, increasing the offense level to 34. (*Id.*). Further, the court found that Sweets qualified as a career offender under U.S.S.G. § 4B1.1, resulting in a final offense level of 37. (*Id.*). Based on an offense level of 37 and the fact that Sweets was in criminal history category VI, the guidelines range was 360 months to life. (*Id.*). On December 22, 2005, the court imposed a sentence of 360 months as to Count One and 240 months as to Count Two, to run concurrent with Count One. (ECF 77). The court also imposed a ten-year term of supervised release as to Count One and a five-year term of supervised release as to Count Two, also to run concurrent with Count One. (*Id.*).[2]

In December 2018, Congress enacted the First Step Act. *See* Pub. L. No. 115-291, 132 Stat. 5194 (2018). The First Step Act provides, *inter alia*, for broader application of the Fair Sentencing Act of 2010, a law aimed at reducing sentencing disparities between crack and powder cocaine offenses. *See United States v. Wirsing*, 943 F.3d 175, 178 (4th Cir. 2019) (citing Fair Sentencing Act, Pub. L. No. 111-220, 124 Stat. 2372 (2010)). Pursuant to Section 404 of the First Step Act, a sentencing court "may . . . impose a reduced sentence as if sections 2 and 3 of

---

[2] The Fourth Circuit affirmed the judgment in July 2007. (ECF 105, 106).

the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed."

*Id*. § 404(b), 132 Stat. at 5222 (citation omitted). A "covered offense" is "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010." *Id*. § 404(a), 132 Stat. at 5222 (citation omitted).

Sweets filed the instant motion petitioning the court for the imposition of a reduced sentence pursuant to the First Step Act. (ECF 228). Because the Fair Sentencing Act changed the mandatory minimum penalty that applies to him on Count One, Sweets asked the court to reduce his sentence on Count One to 240 months. (Mot. at 4–5, ECF 228). Due to the COVID-19 pandemic, however, Sweets now seeks a reduction to time served, plus a period of home confinement as the court deems appropriate. (ECF 232).[3]

The government does not contest that the Fair Sentencing Act modified the mandatory minimum that applies to Sweets on Count One. (Opp'n at 6, ECF 229). Rather, the government argues that because the overall guidelines range was not changed by the Fair Sentencing Act, the court should decline to impose a reduced sentence. (*Id*.). The government also argues that Sweets's concerns related to the COVID-19 pandemic do not support the imposition of a reduced sentence. (ECF 233).

## ANALYSIS

As explained above, Section 404 of the First Step Act authorizes a sentencing court to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." First Step Act of 2018 § 404(b), 132 Stat. at 5222 (citation omitted). Although Sweets's original motion sought a reduced sentence only as

---

[3] The original requested reduction would have resulted in a likely release date in the summer of 2021. (*See* Mot. at 2).

3

to Count One (to 240 months), he now asks the court to impose a total sentence of time served, plus a period of home confinement, which necessarily involves reducing the sentence on Count Two as well. Under the First Step Act, the court is authorized to impose a reduced sentence on both counts. Count One—possession with intent to distribute 50 grams of crack cocaine— qualifies as a "covered offense," *see United States v. Gravatt*, 953 F.3d 258, 263 (4th Cir. 2020), and the fact that Sweets's sentence also involves a non-covered offense does not impact his eligibility for First Step Act relief, *see id*. at 264 ("If Congress intended for the Act not to apply if a covered offense was combined with an offense that is not covered, it could have included that language. But it did not.").

Eligibility for First Step Act relief, however, does not guarantee relief. In determining whether to exercise its discretion to impose a reduced sentence, the court considers the factors set forth in 18 U.S.C. § 3553(a). *See United States v. Chambers*, 956 F.3d 667, 674 (4th Cir. Apr. 23, 2020); *see also United States v. Watts,* No. CR PJM 06-036-1, 2020 WL 586811, at *3 (D. Md. Feb. 6, 2020) (collecting cases).[4] Here, the court places particular emphasis on Sweets's post-sentencing conduct, which "provides the most up-to-date picture of [his] 'history and characteristics,'" *see Pepper v. United* States, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)), and is appropriate to consider on a First Step Act motion, *see Chambers*, 956 F.3d at 675. Sweets has spent over 14 years in BOP custody and has a minimal disciplinary record. (*See* ECF 228-2 (BOP Disciplinary Record)). According to a 2016 BOP Progress Report, "Mr. Sweets demonstrates pro-social behaviors and avoids negative influences. . . . Mr. Sweets is not a management concern." (*See* ECF 228-5 at 10). Sweets has participated in extensive rehabilitative, educational, and vocational programming, including drug education. (*See id*. at 2–

---

[4] Unreported cases are cited for the soundness of their reasoning, not for any precedential value.

5; ECF 228-7 (BOP Certificates)). In a letter attached to his motion, Sweets expressed how his participation in these programs "opened [his] eyes to the true understanding of just how severe and far-reaching the negative impacts of [his] actions and overall lifestyle was on [his] family and community, and that he "know[s] that drugs have had a devastating effect on [him] and others lives and [has] no desire to EVER go back down that road." (ECF 238-6 (Letter from James Sweets)). Sweets has maintained strong relationships with members of his family, including his mother and daughter. (*See* ECF 228-8 (Letter from Robin McCants); ECF 228-9 (Letter from Jasmine Sweets)).

The government does not dispute Sweets's positive post-sentencing conduct, but does argue that the court should not consider (1) non-retroactive changes to the predicate offenses now necessary to trigger sentence enhancements under 21 U.S.C. § 851, or (2) Sweets's argument that he no longer qualifies as a career offender, as these arguments are improper on a First Step Act motion. While the court agrees that Sweets is not *entitled* to a reduced sentence based on these changes to the statutory sentencing scheme, the court may nevertheless *consider* these changes in weighing whether to exercise its discretion to impose a reduced sentence. *See United States v. Smith*, No. CR DKC 98-252, 2020 WL 758525, at *2 (D. Md. Feb. 14, 2020) (courts should not "ignore[]" "significant changes" to sentencing jurisprudence); *United States v. Turner*, No. TDC-06-0274, ECF 50 at 3–4 (D. Md. June 28, 2019) (new provisions relating to predicate offenses for § 851 enhancements "support[]" the decision to impose a reduced sentence). Moreover, the Fourth Circuit recently vacated a district court's denial of a defendant's First Step Act motion where the district court "stated that it would 'not reconsider any sentencing determinations independent of those affected by the Fair Sentencing Act, including the Defendant's classification as a career offender,'" *see Chambers*, 956 F.3d at 675 (citation

5

omitted), suggesting that a district court is not precluded from considering, under the § 3553(a) factors, aspects of a defendant's sentence not amended by statutory changes.

Leaving the § 851 notice and career offender designation in place, the parties agree that Sweets's guideline range remains 360 months to life. Without the § 851 notice, the range would be 262 to 327 months, and without either the § 851 notice or the career offender designation, the range would be 120 to 150 months. (Mot. at 9). The existence of the § 851 notice and career offender designation, however, does not limit the court's ability to impose a reduced sentence, including a below-guidelines sentence. *See Chambers*, 956 F.3d at 675 ("To the extent that the district court in this case believed it either could not vary [from the Guidelines] . . . , it erred."); *see also Watts*, 2020 WL 586811, at *3 ("[T]he Court may further reduce Watts's sentence, including to a below-guidelines sentence."). Here, the court believes the balance of the § 3553(a) factors weighs in favor of departing below the guidelines range driven by the § 851 notice and career offender designation. It appears that the § 851 notice was based on Sweets's 1996 conviction for possession with intent to distribute drugs, for which he received a two-year sentence but served less than one year. (Mot. at 2–3, 9).[5] Under current law, this conviction would likely not suffice, as it does not meet the definition of "serious drug felony." *See* First Step Act of 2018 § 401(a), 132 Stat. at 5220 (for the purposes of sentencing enhancements for prior drug felonies, a "serious drug felony" is one where "the offender served a term of imprisonment of more than 12 months"). The court also notes that Sweets qualified as a career offender based largely on low-level drug offenses committed when he was in his teens and early twenties. (Mot. at 3 n.2, 8). While the court does not minimize the severity of these crimes, Sweets is now in his forties and has demonstrated a commitment to lawful behavior during his

---

[5] The government does not specifically concede nor contest that Sweets served less than one year on the 1996 conviction. (*See* Opp'n at 6–8).

6

more than 14 years at the BOP.

The court acknowledges that the drug trafficking offenses for which Sweets is currently serving his sentence were serious. But the court believes that the more than 14 years Sweets has already served adequately reflect the seriousness of his conduct and recognizes the need for deterrence, public safety, and respect for the law. Moreover, the court finds unpersuasive the government's argument that the COVID-19 pandemic should not be considered as a factor in weighing whether to impose a reduced sentence. While the court agrees that the fact alone of COVID-19 does not justify a reduced sentence, one of the factors courts consider under § 3553(a)(2)(D) is "the need for the sentence imposed . . . to provide the defendant with," *inter alia*, "medical care." *See id*. § 3553(a)(2)(D). Several district courts have reasoned that because the COVID-19 pandemic is likely to impact the BOP's ability to provide medical care, the court may properly consider it under the § 3553(a) factors. *See, e.g., United States v. Pabon*, No. CR 17-165-1, 2020 WL 2112265, at *8 (E.D. Pa. May 4, 2020); *United States v. Burrill*, --- F. Supp. 3d ----, 2020 WL 1846788, at *3 (N.D. Cal. Apr. 10, 2020). Sweets asserts that he "suffers from high blood pressure and takes a host of medications to manage that condition and, thus, may be particularly vulnerable to COVID-19." (ECF 232); *see Coronavirus Disease 2019 (COVID-19), Risk Factors for Severe Illness,* CDC, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html (including hypertension, i.e. high blood pressure, as an underlying condition placing an individual at greater risk of severe illness); *accord United States v. Rountree*, --- F. Supp. 3d ----, 2020 WL 2610923, at *6 (N.D.N.Y. May 18, 2020).[6] While

---

[6] The government asserts that "there is no evidence that the defendant has COVID-19, has been exposed to COVID-19, or that the defendant's physical condition reflects he is at significant risk of contracting the virus. Nor has he presented any evidence that there is currently an outbreak of COVID-19 at his facility of confinement." (ECF 233 at 4). But, as several courts have noted, "even if BOP were testing for COVID-19 consistently enough that its statistics could be relied upon, prison still poses a significant threat to individuals with health conditions [placing them at greater risk for serious illness, including hypertension] because they serve as incubators that accelerate the spread of the disease." *Rountree*, 2020 WL 2610923, at *7 (citing *United States v. Skelos*, No. 15-CR-317 (KMW), 2020 WL

Sweets's potential risk of severe illness due to COVID-19 is not dispositive here, the court acknowledges it as one of many factors in support of a reduced sentence.

Based on the above considerations, and in light of the principle that a sentence should be "sufficient, but not greater than necessary," *see* 18 U.S.C. § 3553(a), the court finds that the § 3553(a) factors weigh in favor of imposing a reduced sentence of time served plus five business days as to Counts One and Two. The court will leave in place Sweets's ten-year term of supervised release as additional protection for the public, and will order that Sweets serve the first 90 days of supervised release on home confinement.

## CONCLUSION

For the foregoing reasons, Sweets's First Step Act motion for imposition of a reduced sentence will be granted. Sweets will be sentenced to time served plus five business days on Counts One and Two. Additionally, a ten-year term of supervised release will be imposed as to Count One, and a five-year term as to Two, to run concurrent. Sweets will spend the first 90 days of supervised release on home confinement at the address approved by U.S. Probation. During that period, Sweets will not leave that address except, with the prior approval of the Probation Office, for medical or other emergencies. For the first 14 days following his release, Sweets will remain self-quarantined at the address approved by U.S. Probation. Additionally, he will comply with all directives of federal, state, and local governments related to public health, including COVID-19. The terms and conditions of supervised release to which Sweets was originally sentenced will also remain in place. A separate order follows.

|  |  |
|---|---|
| __6/10/20__<br>Date | __/S/__<br>Catherine C. Blake<br>United States District Judge |

---

1847558, at *1 (S.D.N.Y. Apr. 12, 2020) ("Jails and prison are powder kegs for infection . . . [because] the COVID-19 virus spreads with uncommon and frightening speed in carceral settings.")).